Filed 11/21/25  In re D.W. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.W., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>C.W. et al.,<br><br>    Defendants and Appellants. | F089810<br><br>(Super. Ct. Nos. JD144614-00, JD144613-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Susan M. Gill, Judge.

Brian Bitker, under appointment by the Court of Appeal, and C.W., in pro. per., for Defendant and Appellant C.W.

Roshni Mehta, under appointment by the Court of Appeal, and David W., in pro. per., for Defendant and Appellant David W.

---

[*]    Before Detjen, Acting P. J., De Santos, J. and Guerra, J.[†]

[†]    Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

No appearance for Plaintiff and Respondent.

-ooOoo-

Appellants C.W. (mother) and David W. (father) are the parents of D.W., who is the subject of this dependency case. Mother and father appealed from the juvenile court's orders issued at the Welfare and Institutions Code section 366.26[1] hearing on May 13, 2025, which resulted in their parental rights being terminated. After reviewing the juvenile court record, both mother and father's court-appointed counsel informed this court they could find no arguable issues to raise on mother or father's behalf. This court granted mother and father leave to personally file a letter setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844 (*Phoenix H.*).)

Both mother and father filed letter briefs alleging various complaints that the juvenile court did not understand their situation or the bond they had with D.W.

We conclude both mother and father failed to address the termination proceedings or set forth good cause showing any arguable issue of reversible error arose from the termination hearing. (*Phoenix H., supra,* 47 Cal.4th at p. 844.) Consequently, we dismiss the appeal.

## FACTUAL AND PROCEDRUAL HISTORY

*Background*

Mother and father are the parents of D.W., who was born in 2021 and is the subject of this appeal. Mother has two other children: O.I., whose father is Oscar I.; and H.M., whose father is Kirk M. Neither O.I. nor H.M. are the subjects of this appeal; and neither of their fathers is a party to this appeal. In September 2013, prior to D.W.'s birth, H.M. was placed into protective custody when mother threatened to harm him and

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

commit suicide during an altercation with Kirk M. Mother completed services and was eventually granted sole legal and physical custody of H.M. In September of 2018, H.M. and then newborn O.I, were placed into protective custody when H.M. was observed with visible injuries, facial swelling, abrasions, a loosened front tooth and petechiae. H.M. reported that Oscar I. (then mother's boyfriend) had caused the injuries. H.M. was released to maternal grandmother, and mother agreed to participate in voluntary family maintenance.

*Current Referral*

Between March and April 2023, O.I. (who is autistic with limited speech), was observed with numerous bruises on his chest, thigh and mouth. O.I. indicated father had caused the bruises. Father later admitted that he grabbed O.I. because he was not listening. He also admitted experiencing sensory overload and anger problems. Mother insisted that the injuries were caused by O.I. falling over a child gate, and she continued to allow father to discipline O.I.

*Petition*

On April 27, 2023, the Kern County Department of Social Services (department) filed a section 300 petition alleging, pursuant to subdivision (a), that D.W., then two years old, was at risk of harm because his half brother, O.I. had been physically abused by father, and pursuant to subdivision (b)(1), that mother had failed to protect O.I. from father. The petition further alleged that D.W. was a person described by subdivision (j), as D.W.'s other half sibling H.M. had previously been declared a dependent of the juvenile court due to physical abuse he suffered from Oscar I. while in mother's care.

*Disposition*

Following detention on May 3, 2023, and jurisdiction March 15, 2024, mother was denied reunification services pursuant to section 361.5, subdivision (b)(2)[2] at disposition on June 13, 2024. Mother had a history of developmental and cognitive impairments, had been granted a guardian ad litem (GAL) in her previous dependency petition and was appointed one for the current dependency as well, at her counsel's request. Mother, who is partially deaf, was a client of the regional center and received weekly assistance in home supportive services. Mother was observed to often be confused, she needed consistent support, and she struggled to provide coherent or consistent explanations when questioned about her children's injuries.

Mother underwent two psychological evaluations to determine her ability to benefit from reunification services. Dr. Carol Matthews concluded that mother had significant cognitive limitations, limited insight into parenting and safety, and did not understand how her children were harmed under her care. Dr. Matthews found mother lacked the protective capacity necessary to recognize or prevent future abuse and was not capable of benefiting from reunification services. Dr. Michael Musacco determined that mother had a low intellectual functioning profile, compounded by developmental delays and a history of trauma. He opined that mother's inconsistent responses, limited understanding of her children's developmental and emotional needs, and her historical patterns of allowing abusive partners to discipline her children would not be corrected by reunification services.

Father, who also had a GAL appointed for him, was given reunification services and a status review hearing set for October 21, 2024.

---

[2]    Section 361.5, subdivision (b)(2) provides that reunification services need not be provided a parent who suffers from a mental disability that renders him or her incapable of utilizing reunification services.

*Status Review Hearing and Termination of Services*

By the time of the review hearing on October 21, 2024, father had received 18 months of services, but the department did not believe he had sufficiently benefited from these services. Father continued to lack insight into his role in the children's removal; he struggled to appropriately apply parenting skills; and he remained in a co-dependent and dysfunctional relationship with mother. While father's visits were generally consistent, they remained supervised due to his lack of judgment and ability to manage the children's needs safely and often required redirection during visits. The juvenile court followed the department's recommendation to terminate services and set a section 366.26 hearing for February 13, 2025, given father's lack of progress and the children's need for permanence and stability.

*Section 366.26 Hearing*

In its report for the section 366.26 hearing, the department recommended that mother and father's parental rights be terminated. D.W. had been living in a resource family home since May of 2023 and was reported to be doing well. D.W. had a bond with his caregivers and viewed them as his primary caregivers. The caregivers expressed a desire to adopt D.W.

D.W. had multiple physical and developmental issues, and had been diagnosed with torticollis, spastic cerebral palsy, and ongoing eye issues. Due to his high activity level, he was accident prone and required a helmet and leg braces for safety. D.W. received specialized speech services at school and had an Individualized Education Plan (IEP). He received ongoing physical therapy and occupational therapy through the regional center.

Mother's visits with D.W. were generally positive and consistent, but at times she struggled to maintain boundaries or demonstrate responsiveness to his cues. At times mother was heard directing D.W. not to refer to the caregiver as "mom." D.W. returned to the caregivers at the end of visits without hesitation. D.W. visited his half siblings, but

5.

the three did not show a strong bond and would often not interact with each other during visits.

At the May 13, 2025, section 366.26 hearing, counsel for both mother and father opposed the department and D.W.'s counsel's recommendations to terminate parental rights. Mother's counsel argued that D.W. had spent a significant part of his early life with mother and that she maintained that relationship through visits. Father's counsel also argued that father had maintained regular visits and a relationship with D.W. that was "important enough" to pursue guardianship rather than adoption. Counsel for D.W. argued it was in D.W.'s best interests to be adopted. The department conceded that mother and father had maintained regular visits with D.W., but D.W. sometimes resisted visits with them, he did not have a significant bond with either parent and had no trouble separating from them at the end of visits, and he was eager to reunite with the caregivers.

The juvenile court agreed that mother and father had maintained regular visits with D.W., but that he had spent half of his life with the current caregivers, and the court did not believe he exhibited a substantial emotional attachment to either parent. The court concluded that, while the visits were not negative, they were not especially positive either, specifically noting D.W.'s willingness to go back to his caregivers.

The juvenile court determined that the parental benefit exception to adoption did not apply and terminated mother and father's parental rights.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 993.)

At a termination hearing, the juvenile court's focus is on whether it is likely the child will be adopted and if so, to order termination of parental rights. (*In re Marilyn H.*

(1993) 5 Cal.4th 295, 309.)  If, as in this case, the child is likely to be adopted, the court must terminate parental rights unless the parent proves there is a compelling reason for finding that termination would be detrimental to the child under any of the circumstances listed in section 366.26, subdivision (c)(1)(B) (exception to adoption).  Father and mother do not challenge the sufficiency of the evidence supporting the court's finding the child is likely to be adopted.  Instead, mother's letter brief to this court simply states that she believes the juvenile court erred in terminating her parental rights and not giving her "a chance again."  Mother opines that she and father were targeted due to their disabilities and that the psychiatrist they saw did not understand their ability to raise D.W.  Father's letter brief also disagrees with the juvenile court's ruling, specifically alleging he does have a strong bond with D.W. "even though the paperwork says I don't" and highlighting various activities that he did with D.W. during the visits.

Having reviewed mother and father's letter briefs, we find neither has made a showing of good cause that an arguable issue exists.  (*Phoenix H., supra,* 47 Cal.4th at p. 846.)  Neither letter brief furnishes a valid argument with supporting legal authorities for the purported claims of error.  (See *In re Sade C. supra,* 13 Cal.4th at p. 994 [parents must " 'present argument and authority on each point made' "].)  Nor do mother or father show that these claims of error, assuming they are true, constitute a basis for reversing the underlying orders.  Our review of the challenged orders confirms counsel's determination that no arguable issues exist.

In sum, mother and father have not raised any arguable issues stemming from the section 366.26 hearing.  Further, though we are not required to, we have reviewed the record as it relates to the hearing under section 366.26, and we have found no arguable issues for briefing.  (*Phoenix, H., supra,* 47 Cal.4th at pp. 841, 842.)  Accordingly, we dismiss the appeal.

## DISPOSITION

This appeal is dismissed.